**CITY STORES COMPANY (as common parent of an affiliated group of corporations)**

v.

**Francis R. SMITH**
and
**Joseph F. J. Mayer.**
Civ. A. No. 17977.

United States District Court
E. D. Pennsylvania.
Sept. 13, 1957.

Milton A. Kamsler (of Folz, Bard, Kamsler, Goodis & Greenfield), Philadelphia, Pa., for plaintiff.

Alan J. Swotes, Asst. U. S. Atty., Fred J. Neuland, Trial Section, Tax Division, Department of Justice, Washington, D. C., for defendants.

VAN DUSEN, District Judge.

The trial judge makes the following Findings of Fact and Conclusions of Law:

### I. Findings of Fact

Paragraphs 2, 3, 4, 5 (including Exhibit C attached to the complaint), 6, 7 (including Exhibit D attached to the complaint), 8, 9, 10, 11, 12 (including Exhibit A attached to the stipulation), 13, 14, 15, 16 (including Exhibit A attached to the complaint), 17, 18 (including Exhibit B attached to the complaint), and 19 of the stipulation filed January 16, 1957, and paragraphs 1, 2, 3, and 4 of the supplemental stipulation filed June 19, 1957, are adopted as the Findings of this court.

### II. Discussion

Section 44(c) of the Internal Revenue Code of 1939 (hereinafter called "Code"), 26 U.S.C.A. § 44(c), provides as follows:

"(c) *Change from accrual to installment basis.* If a taxpayer en-

titled to the benefits of subsection (a) elects for any taxable year to report his net income on the installment basis, then in computing his income for the year of change or any subsequent year, amounts actually received during any such year on account of sales or other dispositions of property made in any prior year shall not be excluded."

Where a taxpayer had used the accrual method of accounting in the years prior to this change to the installment basis provided for in § 44(a)[1] of the Code, the effect of this provision has been to subject the "amounts actually received during any such year on account of sales * * * made in any prior year" to double taxation. This has been upheld as a valid exercise of legislative power not imposing an unconstitutional direct tax. See Willcuts v. Gradwohl, 8 Cir., 1932, 58 F.2d 587, rehearing denied 1932; Jackson Furniture Co. v. McLaughlin, 9 Cir., 1936, 85 F.2d 606, 608; Hoover-Bond Co. v. Denman, 6 Cir., 1932, 59 F.2d 909. See, also, Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 501–503, 68 S.Ct. 695, 92 L.Ed. 831.[2]

Plaintiff contends that the sales by its subsidiaries,[3] Lowenstein and Maison Blanche, of installment accounts to the Union Bank and the National Bank, respectively, prevents the imposition of the second tax, since neither plaintiff nor its subsidiaries during the taxable year here involved "actually received" any collections on such installment accounts.

The defendant initially replies that the provisions of such sales (see Exhibits C and D attached to the complaint which have been adopted in the Findings of

---

**1.** Section 44(a) reads as follows:

"(a) Dealers in personal property. Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be

realized when payment is completed, bears to the total contract price."

**2.** Cf. Guaranty Trust Co. of New York v. Commissioner of Internal Rev., 2 Cir., 1935, 79 F.2d 245, 246; King v. United States, 4 Cir., 1935, 79 F.2d 453, 455; United States v. Hudson, 1937, 299 U.S. 498, 500, 57 S.Ct. 309, 81 L. Ed. 370.

**3.** Plaintiff, with its subsidiaries, filed a consolidated income tax return.

Fact above) and all of the circumstances existing at the time the purported sales were madé to the banks make clear that the transfers were more in the nature of loans, borrowings or advancements of funds made by the banks and, therefore, should not be recognized as bona fide sales for the purpose of determining whether the receipts were includible in plaintiff's income tax return and the provisions of § 44(c) were applicable.

Though the Commissioner of Internal Revenue refused to treat the transfer of plaintiff's installment accounts to the banks as sales effecting "closed" transactions (stipulation, paragraph 13), the Appellate Division—Philadelphia Region, Internal Revenue Service, "conceded that the contracts transferring the installment receivables to the respective banks constituted sales of said receivables" (stipulation, paragraph 17).[4]

Considering all of the circumstances,[5] particularly the creation of Installment Payment Reserve Accounts in both instruments by which plaintiff stood to lose substantial sums of money, and the principles of law in East Coast Equipment Co. v. Commissioner of Int. Rev., 3 Cir., 1955, 222 F.2d 676, 677,[6] the hearing judge concludes that these contracts did constitute sales effecting completed transactions.[7]

Defendant, in the alternative, contends that if the transactions are sales, the requirement of § 41 of the 1939 Code, 26 U.S.C.A. § 41,[8] would be violated if the "amounts actually received" under § 44 (c) by plaintiff's subsidiaries from these installment sales during the taxable year were excluded from plaintiff's income tax return.

Further, defendánt contends that Congress intended by § 44(c) to require the collections on installment accounts during the period of transition to be included in computing income during that period as a consequence of permitting a taxpayer to change his method of accounting from the accrual to the installment basis.[9] But since the collections made by plaintiff's subsidiaries on behalf of the purchasing banks, and the transmittal of such collections to the banks were a condition of the sales, plaintiff did not obtain any beneficial interest in the amounts collected after the sales.

Treasury Regulations 111, § 29.44–1, 26 C.F.R.Cum.Supp., Chapter 1, Part 29, provides, in part, as follows:

"The general rule prescribed is that a person who regularly sells or

4. See stipulation, paragraph 17, for the reasoning behind the disallowance of the claim for refund.

5. The principle of law that "the courts are concerned with substance and realities, and formal written documents are not rigidly binding" (Helvering v. F. & R. Lazarus & Co., 1939, 308 U.S. 252, 255, 60 S.Ct. 209, 210, 84 L.Ed. 226) has also been taken into consideration in the court's determination of this issue. The specific factual situation in the Lazarus case, though, is clearly distinguishable from that here present.

6. See, also, Elmer v. Commissioner of Internal Revenue, 2 Cir., 1933, 65 F.2d 568; Alworth-Washburn Co. v. Helvering, 1933, 62 App.D.C. 322, 67 F.2d 694. Cf. Rev.Rule 54–43, Internal Revenue Bulletin, Cum.Bulletin 1954–1, p. 119.

7. See, also, 11 West's LSA–C.C. Art. 2642 (p. 137); 10 West's LSA–C.C. Art. 2439; Scott v. Corkern, La.1956, 91 So. 2d 569; Louisiana Contracting Co. v. Board of Com'rs, 1922, 150 La. 559, 91 So. 43, rehearing denied 1922; 95 A.L.R. 1197; State v. J. W. Kelly & Co., 1910, 123 Tenn. 556, 133 S.W. 1011, 1012; Harris v. Egger, 6 Cir., 1915, 226 F. 389, 395; Potter v. Coward, 1838, 19 Tenn. 22, 26.

8. Section 41 contains, in part, the following:
"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but * * * if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income."

9. See Commissioner of Internal Revenue v. South Texas Lumber Co., supra, 333 U.S. at pages 502–503, 68 S.Ct. at page 699, and Senate Rep. No. 960, 70th Cong., 1st Sess., pp. 22, 23 (1939–1 Cum. Bull. (Part 2), 409, 424–425).

otherwise disposes of personal property on the installment plan, whether or not title remains in the vendor until the property is fully paid for, may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total or gross profit (that is, sales less cost of goods sold) realized or to be realized when the property is paid for, bears to the total contract price. Thus, the income of a dealer in personal property on the installment plan may be ascertained by taking as income that proportion of the total payments received in the taxable year from installment sales (such payments being allocated to the year against the sales of which they apply) which the total or gross profit realized or to be realized on the total installment sales made during each year bears to the total contract price of all such sales made during that respective year. No

payments received in the taxable year shall be excluded in computing the amount of income to be returned on the ground that they were received under a sale the total profit from which was returned as income during a taxable year or years prior to the change by the taxpayer to the installment basis of returning income." [10]

■ It is clear that these installment payments were not actually "received" by plaintiff or its subsidiaries and, therefore, cannot be included as part of plaintiff's income in such taxable year. The statutory language of §§ 41 and 44(a) and (c), and the Treasury Regulations interpreting them, do not appear to require the result defendant contends for and, therefore, in view of the principle that a construction of statutory wording which will result in double taxation must be avoided unless required by express words,[11] plaintiff must be granted a refund of the overpayments claimed herein.[12]

10. The relevant portion of Treasury Regulations 111, § 29.41–1, relied on by defendant, reads as follows:

"The time as of which any item of gross income or any deduction is to be accounted for must be determined in the light of the fundamental rule that the computation shall be made in such a manner as clearly reflects the taxpayer's income. If the method of accounting regularly employed by him in keeping his books clearly reflects his income, it is to be followed with respect to the time as of which items of gross income and deductions are to be accounted for * * *. If the taxpayer does not regularly employ a method of accounting which clearly reflects his income, the computation shall be made in such manner as in the opinion of the Commissioner clearly reflects it."

Plaintiff contends that the Regulations under § 41 are inapplicable to this case due to the following language in Treasury Regulations 111, § 29.41–2, 26 C.F.R. Cum.Supp. 213, Chap. 1, Part 29:

"The foregoing requirements relative to a change of accounting method are not applicable if a taxpayer desires to adopt the installment basis of returning income, as provided in § 29.44–1, but are applicable if a taxpayer desires to change

from such basis to a straight accrual basis."

Such language, though, merely refers to the necessity of the Commissioner agreeing to the terms and conditions of a change of accounting methods except where, as here, the installment method is being adopted.

11. United States v. Supplee-Biddle Hardware Co., 1924, 265 U.S. 189, 196, 44 S.Ct. 546, 68 L.Ed. 970; Commissioner of Internal Revenue v. Whitehouse, 1 Cir., 1930, 38 F.2d 162, 164, affirmed 1931, 283 U.S. 148, 51 S.Ct. 374; 75 L. Ed. 916; National Bank of South Carolina v. Lucas, 1929, 59 App.D.C. 157, 36 F.2d 1013. ·See, also, Parks-Chambers v. Commissioner of Int. Rev., 5 Cir., 1942, 131 F.2d 65, 66, where the court stated that " * * * tax consequences are statutory, not matters of equitable cognizance."

12. In view of the foregoing, it is not necessary to definitively affirm or reject plaintiff's contention that double taxation in this factual situation is unconstitutional. Section 453(c) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 453(c), which eliminates double taxation where a taxpayer changes from the accrual to the installment basis of accounting, has

■ A taxpayer has the legal right "to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits;" and "the motive of the taxpayer thereby to escape payment of a tax will not alter the result or make unlawful what the statute allows." Gregory v. Helvering, 1935, 293 U.S. 465, 468, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596. See Chisholm v. Commissioner of Internal Revenue, 2 Cir., 1935, 79 F.2d 14, 15, certiorari denied Helvering v. Chisholm, 1935, 296 U.S. 641, 56 S.Ct. 174, 80 L.Ed. 456; United States v. Cumberland Pub. Serv. Co., 1950, 338 U.S. 451, 455, 70 S.Ct. 280, 94 L.Ed. 251; and Superior Oil Co. v. State of Mississippi, 1930, 280 U.S. 390, 395–396, 50 S.Ct. 169, 74 L.Ed. 504. Cf. Parks-Chambers v. Commissioner of Int. Rev., supra, 131 F.2d at page 66, where the court said:

"Where the taxpayer's acts are unequivocal, as here, and their tax consequences clear, questions, of the intent with which he did the act, or the supposed equitable or inequitable result of this or that view are wholly immaterial. What the taxpayer did, and not what he intended to do, is the controlling inquiry." [13]

---

no application to the instant case, which is governed by the 1939 Code. Nor is it suggestive of the Congressional attitude toward interpretations under the 1939 Code, since this court must consider the law as it existed when this set of facts occurred.

13. See, also, Meurer Steel Barrel Co. v. Commissioner of Int. Rev., 3 Cir., 1944, 144 F.2d 282; Granite Trust Company v. United States, 1 Cir. 1956, 238 F.2d 670, 675; Riddlesbarger v. Commissioner of Internal Revenue, 7 Cir., 1952, 200 F.2d 165, 172–173.

In Sun Properties v. United States, 5 Cir., 1955, 220 F.2d 171, 174–175, the court specifically noted: "Nor does the fact that this transaction may not have had any business purpose other than saving taxes, rationally imply that it was not a sale."

The hearing judge has not failed to note the proposition that "the transac-

---

III. Conclusions of Law

Plaintiff's requested Conclusions of Law Nos. 1 to 11, inclusive, are adopted as the Conclusions of Law of this Court.

All requests for Conclusions of Law which are inconsistent with the foregoing are denied.

tion must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. * * * To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." Commissioner of Internal Revenue v. Court Holding Co., 1945, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981; Landa v. Commissioner of Internal Revenue, 1954, 93 U.S.App.D.C. 265, 211 F.2d 46, 50; and Chamberlin v. Commissioner of Internal Revenue, 6 Cir., 1953, 207 F.2d 462, 468–469. See, also, Gregory v. Helvering, supra (see footnote 5). But, in view of the determination that the transactions were sales, the tax avoidance purpose behind them does not invalidate their effectiveness and the proposition mentioned above is inapplicable.